634 So.2d 1231 (1994)
Wanda PARKER, Plaintiff-Appellee,
v.
Loyd PARKER, Defendant-Appellant.
No. 93-817.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1994.
*1232 Jack W. Caskey, Lake Charles, for Wanda Parker Born Baggett.
C. Kerry Anderson, De Ridder, for Loyd Parker.
Before KNOLL and COOKS, JJ., and CULPEPPER[*], J. Pro Tem.
KNOLL, Judge.
This appeal arises out of a divorce action wherein the trial court awarded Wanda Parker permanent periodic alimony of $97.00 per month. Loyd Parker brings this appeal making nine assignments of error, all concerning the correctness of the alimony award.

FACTS
Wanda and Loyd were married in Calcasieu Parish in 1966. On April 2, 1992, Wanda filed a petition for divorce requesting alimony pendente lite and permanent periodic alimony after divorce.
The pendente lite issue came before a hearing officer on April 27, 1992, and the hearing officer recommended no alimony pendente lite be awarded, but did recommend Loyd maintain medical coverage on Wanda (through his employer) pending divorce. These recommendations were incorporated into a judgment on May 5, 1992.
Loyd filed a reconventional demand seeking divorce on December 14, 1992. After a trial on the merits, the trial court decreed the parties divorced and condemned Loyd to pay $97.00 per month permanent periodic alimony. The record contains only the judgment and there are no written or oral reasons elaborating on the trial court's findings.

ASSIGNMENTS OF ERROR
In his first assignment of error, Loyd emphasizes that in order for a party to receive permanent alimony, that party must prove a significantly greater need for support than that party is required to prove in order to receive alimony pendente lite. Thus Loyd contends that if Wanda was not entitled to alimony pendente lite, she could not possibly be entitled to permanent alimony.
While this situation appears unusual, we do not feel that it is alone dispositive of the issue. We do not know what other factors the trial court considered in awarding one and not the other. Specifically, we note that prior to divorce, Loyd was required to carry health insurance on Wanda, but this item was not mentioned in the final judgment (presumably because such coverage by Loyd's employer would not be available to a former spouse).
The remaining assignments of error all deal with whether certain items should be considered as necessary living expenses and will be addressed together.
In order to determine Wanda's entitlement to alimony, we must first determine whether or not she has sufficient means for *1233 her support. LSA-C.C. art. 112.[1] If Wanda does not have sufficient means, then the principal factor we must consider in determining whether alimony is properly payable is the relative financial positions of the parties. Lopez v. Breaux, 462 So.2d 1333 (La.App. 3rd Cir.1985). In evaluating Wanda's means for support, the only evidence provided in the record is the parties' affidavits of income and expenses and the transcript of the brief testimony of the parties at trial. Without any elaboration from the trial judge concerning the accuracy of the evidence on income and expenses, we will assume he accepted the affidavits as they appear. Our assumption is bolstered by the fact that the alimony award was exactly 10% of Loyd's net monthly income as listed in his affidavit.
Wanda's affidavit showed a gross income of $891.00 and indicated no payroll deductions.[2] She claimed $733.40 in "total monthly living" expenses and $134.00 per month in "fixed debts". However, at trial, testimony elicited from Wanda cast doubt on the accuracy of her affidavit. Wanda received a tax credit of approximately $1,200.00 for the year of the trial. She admitted this was not included on her affidavit and we amend her net income amount to reflect an additional $100.00 per month. Wanda also indicated at least half of her $250 monthly food bill went towards feeding their 20 year old son who was residing with her. The jurisprudence clearly does not allow the support of major children to be considered a living expense of one of the spouses. Russell v. Russell, 520 So.2d 435 (La.App. 3rd Cir. 1987). Thus we reduce her reported living expenses by $125.00.
As part of Wanda's monthly fixed debt, she included payments of $84.00 on her Discovery and Montgomery Ward credit cards. There was no testimony indicating what these payments are for. Since Wanda's monthly living expenses were itemized in another part of her affidavit, we cannot assume that the credit card debts should be included as living expenses. Without some proof of the origin of these debts, we will consider them miscellaneous. The term "support" does not encompass miscellaneous expenses. Lindsey v. Lindsey, 546 So.2d 1332 (La.App. 3 Cir.1989). Similarly, we also note Loyd's affidavit has several items appearing as fixed debts that do not indicate their connection to any living expense. These include $20 with only a notation of "T. Rutledge" beside it, $40 with the notation "Sears", and $50 identified only as "loan".
In summary, we find the parties' monthly expenses and income to be as follows:

Loyd's monthly income/expenses
Net Income ................................ $970.30
Expenses as stated on affidavit ........... $961.00
(less Rutledge debt) ...................... ($20.00)
(less Sears debt) ......................... ($40.00)
(less "loan" debt) ........................ ($50.00)
 ________
Revised Expenses .......................... $851.00
Wanda's monthly income/expenses
Net Income ................................ $891.00
plus $100.00 from tax credit .............. $100.00
 _______
Revised Net Income ........................ $991.00
Expenses as stated on affidavit ........... $861.00
(less food for major child) ...............($125.00)
(less Discovery/Montgomery Ward debt) .....($ 84.00)
 ________
Revised Expenses .......................... $652.00

As stated above, the divorce judgment did not order Loyd to continue carrying health insurance on Wanda. At trial, Wanda testified she would have to pay $181.00 per month to secure insurance through a private insurer. Loyd contends in brief that the trial court must have included this amount in Wanda's expenses if it found she did not have sufficient means for support. Loyd cites two cases holding health insurance is a living expense, Vernotzy v. Vernotzy, 591 So.2d 1293 (La.App. 3rd Cir.1991) and Tracy v. Tracy, 388 So.2d 66 (La.App. 1st Cir.1980). However, Loyd contends these cases go against the great weight of the jurisprudence which generally does not allow health insurance as a living expense.
We find it unnecessary to address this issue. Even including the health insurance *1234 premium, Wanda's living expenses do not exceed her income ($991.00 - $652.00 - $181.00 = $158.00). While not being sure what factors the trial court considered, we do not believe Wanda can be considered to have insufficient means for support. Finally, even assuming, arguendo, that Wanda's expenses left her without sufficient means, a comparison of incomes weighs heavily against granting alimony. Loyd's remaining income after subtracting his living expenses from his net income ($970.00 - $851.00 = $119.00) is less than Wanda's ($158.00). Under these circumstances, the trial court was clearly wrong in granting Wanda permanent periodic alimony.
For the foregoing reasons, the judgment of the trial court is reversed and set aside. Costs of this appeal are assessed to Wanda Parker.
REVERSED AND RENDERED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] It was uncontested that Wanda was not at fault and this issue was not litigated.
[2] Since Wanda listed no payroll deductions from her gross income, her net income will be considered the same amount.