649 So.2d 151 (1995)
Sandra Crenshaw LaFORGE, Plaintiff-Appellee,
v.
Rodney LaFORGE, Defendant-Appellant.
No. 26,317-CA.
Court of Appeal of Louisiana, Second Circuit.
January 25, 1995.
*152 Woodrow Wilson, Bastrop, for appellant.
J. Edward Patton, II, Monroe, for appellee.
Before MARVIN, SEXTON and STEWART, JJ.
SEXTON, Judge.
This is an appeal by Mr. LaForge, challenging the trial court decision in his "counter-rule" seeking a reduction in child support and alimony. We affirm.
As a result of the divorce between the parties on November 17, 1982, the father, Rodney LaForge, was ordered to pay $200.00 per month per child support for the two minor children born of the marriage. Mr. LaForge was also ordered to maintain hospitalization insurance and pay one-half of the medical expenses not covered by insurance and $75.00 per month permanent alimony.
On October 22, 1991, the mother, Sandra Crenshaw LaForge, now Crenshaw (hereinafter referred to as Ms. Crenshaw), filed a rule for increase in child support and for contempt alleging that the father had consistently been late with child support payments and had refused to share in orthodontic expenses for the child. The father filed a counter rule for reduction in child support and alimony, which forms the basis for this appeal.
The trial court rendered judgment on August 27, 1992, refusing to increase or decrease child support or alimony and finding Mr. LaForge in contempt of court for failure to timely pay his child support and alimony obligations in accordance with the court order. Further, the court determined that Ms. Crenshaw had failed to present sufficient evidence to demonstrate that Mr. LaForge had failed to pay his one-half of the dental expenses and therefore denied her request that Mr. LaForge be found in contempt of court on this issue.
Mr. LaForge filed a motion for new trial in which he asserted that the trial court incorrectly considered both the salaries of Mr. LaForge and his second wife in the calculation of child support. Mr. LaForge further requested a deletion of alimony and a calculation of child support in accordance with the Louisiana Child Support Guidelines.
The trial court rendered judgment on the motion for new trial affirming its earlier inclusion of both salaries in the determination of child support. The court further affirmed its earlier denial of Mr. LaForge's request for the deletion of alimony payments. The court, however, recalculated the child support payments in accordance with the Louisiana child support guidelines, assessing Mr. LaForge with $477.85 per month for child support for both children, with a $108.42 per month credit for insurance payments made by Mr. LaForge on behalf of the children in accordance with the original judgment. With this credit, therefore, Mr. LaForge's child support payments were increased to the total amount of $369.43 per month in accord with the child support guidelines. The court additionally ordered a reduction *153 in this amount when the older child attained the age of majority. The court deleted the obligation of Mr. LaForge to pay one-half of the medical expenses not covered by insurance from the date of March 30, 1993. All other matters contained within the August 27, 1992, judgment were affirmed.
Mr. LaForge appeals, arguing several errors in the trial court judgment. He first argues that because at the time of the hearing his income had decreased and his ex-wife's increased, the trial court was in error in failing to decrease the alimony payments. He also asserts that the trial court erred in considering the income of his second wife in its determination of both the child support and alimony obligations.

CHILD SUPPORT
The child support guidelines are set forth in LSA-R.S. 9:315, et seq., and are to be used in any proceeding to establish or modify child support. LSA-R.S. 9:315(6)(c) was amended by Act 854 of the 1991 Regular Session, effective September 6, 1991, and reads:
(6) "Income" means:
(c) The court may also consider as income the benefits a party derives from expense-sharing or other sources; however, in determining the benefits of expense-sharing, the court shall not consider the income of another spouse, regardless of the legal regime under which the remarriage exists, except to the extent that such income is used directly to reduce the cost of a party's actual expenses.
[Emphasis ours.]
If the court finds that the application of the guidelines would not be in the best interest of the child or would be inequitable to the parties, it may deviate from the guidelines but shall give oral or written reasons for the deviation which shall be made part of the record of the proceeding. LSA-R.S. 9:315.1(B). The standard of review is whether the trial court abused its discretion. Mayo v. Crazovich, 621 So.2d 120 (La.App. 2d Cir.1993).
In this case the trial court calculated the income of Rodney LaForge utilizing the same amount for both the child support and alimony determinations. In both calculations, the court considered the income of Mr. LaForge's second wife. Mr. LaForge argues this inclusion was error.
In calculating the income of Rodney LaForge, the court reviewed the verified affidavit of income and expenses submitted by Mr. LaForge, which included both his income and that of his second wife from their trucking business. That affidavit reflected a yearly adjusted gross income for both parties in the amount of $14,734.41, calculated by deducting the sum of $85,734.42 which Mr. LaForge characterized as "expenses of operating truck," from the sum of $100,081.85, the sum listed as the yearly "gross income" of the trucking operation. The trial court determined that the affidavit of income and expenses submitted by Mr. LaForge inappropriately deducted items labeled "on road expenses," and added this amount, $11,960.00, back into, the adjusted gross income calculation. Because the affidavit reflected only amounts earned through December 1, 1991, the trial judge recalculated Mr. LaForge's yearly adjusted gross income to be $20,002.08, or a total of $1,662.84 per month.
We note that neither Mr. LaForge nor Ms. Crenshaw have contested the trial court calculation of income. (i.e., the actual monetary amounts determined by the trial court to be the income of both parties) In fact, both have accepted the trial court calculation in brief for purposes of appeal. We therefore do not address the correctness of the calculation itself, including the propriety of claimed business expense deductions from gross income. We do address the issue of inclusion of the second Mrs. LaForge's income in the child support calculation.
The affidavit of income and expenses as well as testimony presented at the hearing on the rule to reduce child support and alimony indicates that Mr. LaForge and his second wife are involved in a joint trucking business. The testimony indicates that they entered into the trucking business and classified it as a partnership. Each is qualified as a co-driver of the truck owned by both. The *154 couple drives for the company of Vernon Sawyer and the checks are written in the name of Mr. LaForge only. Mrs. LaForge testified that she never received a check in her name. She did note, however, that actually it was the truck that was paid, rather than she and her husband. The parties received no other income other than from this trucking venture. Lisa Wooley, office manager for Vernon Sawyer, testified that Mr. and Mrs. LaForge jointly owned the truck in which they traveled and leased it to Vernon Sawyer. The couple was paid for the loads that they hauled on a weekly basis. She testified that both parties' names are on the contract with Vernon Sawyer and that the arrangement between the couple would be characterized as a "fifty-fifty partnership." Mrs. LaForge testified that she handled the accounting for the business and paid the child support check from the couples' checking account.
In light of these facts, we cannot find that the trial court abused its discretion in including the salary of the second Mrs. LaForge in the child support calculation. While we recognize that the revision of LSA-R.S. 9:315(6)(c), in 1991, clearly does not favor the consideration of second spouse's income, that article nonetheless has made provision for inclusion of a second spouse's income under certain circumstances, that is, when it is shown that the income "is used directly to reduce the cost of a party's actual expenses." We find this case to be such a circumstance.
The record reveals that the trucking business was a partnership entered into between the couple. The truck, co-owned by the couple, actually earned the income for the business. Any expenses of the business were paid from the gross income of both parties. Further, the LaForges are classified as co-operators and co-owners of the truck. Clearly, the income derived from this business is utilized to provide for food, showers, and other day-to-day expenses while the couple is on the road.
It is clear that the personal expenses of Mr. and Mrs. LaForge while on the road are intertwined and that these personal expenses are further commingled with the legitimate truck expenses. A separation of these expenses would be extremely difficult. The important point is that Mrs. LaForge's efforts, while obviously contributing directly to the income from "the truck" also operate directly to pay part of Mr. LaForge's living expenses.
We therefore distinguish this case from Mayo v. Crazovich, supra, in which this court discussed the issue of consideration of a second spouse's income after the 1991 revision of LSA-R.S. 9:315(6)(c). The second Mrs. Mayo was employed as a school teacher. Mr. Mayo had started his own poultry farm, which had yielded only a sparse income. Pursuant to the revised provisions of LSA-R.S. 9:315(6)(c), the trial court refused consideration of the second Mrs. Mayo's salary. The former Mrs. Mayo appealed arguing error in this denial. This court affirmed the refusal to consider the income of the second spouse finding that "[the extent to which this income reduced the actual expenses of Mr. Mayo is not disclosed by the record." Therefore, we concluded that the trial court did not abuse its discretion in not considering the second spouse's income.
In Mayo, the salary of the second spouse came from an entirely separate source than her husband. The nature of the two jobs of the couple was clearly distinct, unlike the present partnership arrangement whereby both parties perform the same job together and receive one check in payment. Further, the record in Mayo, failed to disclose the extent that the second salary reduced the actual expenses of Mr. Mayo. In the instant case, the affidavit of expenses and income of the partnership reflects that the income of both parties is utilized directly to reduce the expenses of the trucking business. Because of the nature of the enterprise, many of the day to day expenses of Mr. LaForge, unlike in more conventional lifestyles, are incurred while the parties travel and are reflected by the parties as business expenses. This record therefore sufficiently demonstrates that the income of the second Mrs. LaForge is utilized to reduce the actual expenses of her husband. Just as in Mayo, on this record we conclude that the trial court did not abuse its discretion in the evaluation of whether the *155 second spouse's income contributes to the payor spouse's expenses.

ALIMONY
When the person who gives or receives alimony is placed in such a situation that the one can no longer give, or that the other is no longer in need of it, in whole or in part, the discharge from or reduction of the alimony may be sued for and granted. LSA-C.C. Art. 232.
In order to prevail in an action to reduce or terminate a previous alimony award, plaintiff-in-rule must prove a change in circumstances, either in his own or that of defendant-in-rule from the time of the divorce to the time the motion is filed. Dabney v. Dabney, 603 So.2d 786 (La.App. 1st Cir.1992), writ denied, 607 So.2d 563 (La. 1992). A trial judge is given great latitude in either granting or modifying awards of alimony or child support, and his judgment will not be set aside or amended unless clear abuse of that discretion is shown. Gibson v. Gibson, 592 So.2d 855 (La.App. 3d Cir.1991), affirmed, 592 So.2d 861 (La.App. 3d Cir. 1991). A reduction of alimony is warranted when the person who gives or receives alimony is placed in such a situation that one can no longer give or that the other is no longer in need of it. Creech v. Creech, 449 So.2d 1192 (La.App. 2d Cir.1984).
We first address the propriety of the trial court's consideration of the income of Rodney LaForge's second wife in the denial of his request for reduction in alimony.
As discussed earlier, the trial judge calculated the sum of $1,662.84 as the monthly income of Rodney LaForge. This amount included the income of the second Mrs. LaForge as reflected on the Affidavit of Income and Expenses submitted by the couple. As we noted earlier, we do not address the correctness of this calculation as the parties do not raise this issue on appeal.
Mr. LaForge argues that only his income, and not that of his second wife, should have been included in the alimony calculation. We are unpersuaded by this argument. It is appropriate to consider the income of the second Mrs. LaForge in the calculation of permanent alimony as part of the overall circumstances of the obligor. LSA-C.C. Art. 112; Hackett v. Hackett, 617 So.2d 1239 (La. App. 3d Cir.1993); Stolier v. Stolier, 357 So.2d 1334 (La.App. 4th Cir.1978), writ denied, 359 So.2d 621 (La.1978); Swider v. Swider, 314 So.2d 372 (La.App. 4th Cir.1975), writ denied, 320 So.2d 551 (La.1975).
Nor do we find that Mr. LaForge has demonstrated a change in circumstances sufficient to warrant a reduction of the alimony payments.
In addition to the finding that the present income of Mr. LaForge, including that of his second wife was $1,662.84 per month, the trial court also reviewed the testimony of the earlier hearing relating to the original award of alimony in order to determine what the salary of Mr. LaForge was at the time of the original decree. The court determined that, based upon the testimony of Rodney LaForge at that earlier hearing on November 13, 1987, that Mr. LaForge earned approximately, $21,552.00 per year, or $1,796.00 per month, at the time of the original alimony judgment.
Although this transcript was not included with the record before us on appeal, a court can take judicial notice of its own proceedings in the same action. Fontana v. Fontana, 426 So.2d 351 (La.App. 2d Cir. 1983), writ denied, 433 So.2d 150 (La.1983); Lee v. East Baton Rouge Parish School Board, 623 So.2d 150 (La.App. 1st Cir.1993), writ denied, 627 So.2d 658 (La.1993); Chrysler Credit Corporation v. Henry, 221 So.2d 529 (La.App. 4th Cir.1969). We have, accordingly, supplemented this record with a transcript of the November 13, 1987, hearing.
A review of that transcript demonstrates that Mr. LaForge testified to earning approximately $21,000 per year. He indicated that he received approximately $1,615.00 per month, but noted that he had at that time received a three percent increase in this salary which was not yet reflected on his check stubs. In the present hearing, the trial court calculated Mr. LaForge's salary as of November 13, 1987, in the amount of $21,552.00 per year or $1,796.00 per month.
Next, the court determined that the salary of Mrs. Crenshaw at the time of the present *156 hearing was $903.00 per month, as supported by her itemized list of expenses. The court surmised that this amount was an approximate $300.00 per month increase in salary from the November 13th hearing. A review of the Itemized List of Expenses submitted by Sandra Crenshaw LaForge on November 17, 1988, indicates that her monthly salary as of that date was $624.00.
From this evidence, the trial court maintained the $75.00 per month original alimony award. We find no abuse of discretion in that finding based on the record before us. The evidence clearly reveals that Mr. LaForge remains in much the same financial condition as he did in November of 1987, the date of the original alimony award. Additionally, while the salary of Sandra Crenshaw LaForge has increased by $300.00 per month since the time of the original decree, her list of expenses reveals that she remains in need of the alimony as her expenses exceed her income. Thus, Ms. Crenshaw's circumstances remain basically the same as they did at the time of the original rule. We find no abuse of discretion in the trial court denial of Rodney LaForge's request for reduction in alimony.
The judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.